T.C. Memo. 2000-211


UNITED STATES TAX COURT



GOLD BAR, INCORPORATED D/B/A
All AMERICAN TRUCKING COMPANY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10356-98.                    Filed July 10, 2000.


B. Gray Gibbs, for petitioner.

Monica J. Miller and Randall Pooler, for respondent.



MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  In a notice of deficiency addressed to
petitioner, respondent determined deficiencies and penalties as
follows:

|       |            | Penalty      |
| Year  | Deficiency | Section 6663 |
|-------|------------|--------------|
| 1993  | $8,798     | $6,599       |
| 1994  | 34,661     | 25,996       |
| 1995  | 38,206     | 28,655       |

After concessions,[1] the issue for our consideration is whether petitioner is liable for fraud penalties under section 6663[2] for the 1993, 1994, and 1995 tax years.

### FINDINGS OF FACT[3]

Petitioner is a Florida corporation, with its principal place of business in Lakeland, Florida. Petitioner was incorporated on August 11, 1977, but was inactive until 1981 or 1982. Petitioner was administratively dissolved on September 26, 1997, for failing to file its annual report and is no longer in business. Gregory Golden (Mr. Golden) is petitioner's president and sole shareholder.

During the years at issue, petitioner was engaged in a transportation business. Petitioner entered into contracts with companies such as International Minerals & Chemical Corp. (IMC), Florida Favorite Fertilizer, and United Road Builders to transport goods and materials for them. Petitioner's primary

---

[1] During trial, petitioner conceded all of the unreported income and overstated expense issues, thereby conceding the tax deficiencies of $8,798, $34,661, and $38,206 in the 1993, 1994, and 1995 tax years, respectively. In his brief, respondent stated that petitioner conceded the tax deficiencies in the amounts of $6,599, $25,996, and $28,655 for the tax years at issue. These amounts, however, are incorrect, as they represent the sec. 6663 penalties and not the deficiencies.

[2] Section references are to the Internal Revenue Code in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[3] The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

customer was IMC, for which petitioner hauled limestone. Petitioner had an arrangement with a pool of drivers whom it treated as independent contractors. These drivers generally used their own trucks to transport a given load of goods. However, Mr. Golden owned some trailers that he sometimes rented to the drivers.

When petitioner's contract customers had materials to be transported, petitioner would assign drivers to the job, and the drivers would transport the materials. The contracting companies would pay petitioner for the transportation service, and petitioner would, in turn, pay the drivers for their services. The amount paid by petitioner to the drivers was a netted amount. The gross amount received by petitioner with respect to the loads transported by the drivers was netted by deductions for: (1) A brokerage commission charged by petitioner and (2) certain expenses for worker's compensation, liability insurance, fuel costs, trailer rental, and collision insurance.

Mr. Golden maintained petitioner's books and records for the years at issue. Mr. Golden graduated from high school but never took any accounting or college-level courses. Amongst the records maintained was a ledger reflecting the activity of each truck for a particular time period. The ledger for 1993, however, had been discarded by Mr. Golden. The ledgers for the 1994 and 1995 tax years list the number of loads each truckdriver

transported within the period, the gross amount earned with respect to the loads transported within the time period, and the amount deducted from the gross amount earned for worker's compensation, brokerage commission, liability insurance, trailer rental, collision insurance, and fuel costs. Each ledger sheet devoted one line to a driver. There are columns along the top of each ledger sheet that include information such as the gross amount received from IMC or other companies and the expenses or brokerage commission that was deducted by petitioner.

Because each payment a driver received for transporting a load(s) was reduced by some or all of these expenses, the checks received by the drivers from petitioner were for net proceeds. For example, during the week of January 17, 1994, driver number 12 hauled 16 loads for IMC. IMC paid petitioner $1,136.90 ($816.90 for the loads that driver number 12 transported plus a $320 fuel service charge). Petitioner then deducted $110 for worker's compensation, $57 for its brokerage commission, $135.50 for liability insurance and $242.65 for fuel. Petitioner issued a check to driver number 12 for $591.75.

The amounts that petitioner deducted from the drivers' checks for various expenses were marked up from the actual expenses that petitioner incurred. Thus, in the example above, the worker's compensation insurance, the liability insurance, and

the fuel all cost petitioner less than what it charged the drivers.

During the years at issue, petitioner did not have any operating assets other than cash in a checking account. Mr. Golden and his wife, Phyllis, were the only ones with signatory authority on petitioner's checking account. Checks that came in from contracting companies such as IMC and Florida Favorite Fertilizer were deposited in petitioner's account, and the Goldens wrote checks to pay the drivers and to pay expenses. Deposits into petitioner's checking account totaled $1,185,100.20 and $1,203,921 during 1994 and 1995, respectively. In 1993, 1994, and 1995, checks totaling $270,000, $186,000, and $202,100, respectively, were drawn from petitioner's account to Mr. Golden.

Amos Jackson, a tax consultant, prepared the 1993, 1994, and 1995 tax returns for petitioner. Mr. Golden provided Mr. Jackson with the amounts of money petitioner had received from the corporations for which petitioner performed transportation services and also told Mr. Jackson that he had paid out equal amounts to the drivers. Mr. Golden did not provide Mr. Jackson with the ledgers or any other books or records regarding petitioner.

Petitioner's reported gross receipts for 1993, 1994, and 1995 were $1,336,876.73, $1,140,870, and $1,169,111, respectively. Petitioner's returns reflected deductions for

expenses in the same amounts, resulting in no taxable income reported for 1993, 1994, and 1995 Federal income tax purposes.

OPINION

Respondent determined that petitioner fraudulently failed to report income by overstating its expenses and/or underreporting its gross receipts on its 1993, 1994, and 1995 tax returns, resulting in underpayments of $8,798, $34,661, $38,206, respectively. Respondent determined that the entire underpayment for each year is attributable to fraud. Therefore, respondent determined that petitioner is liable for civil fraud penalties under section 6663 in the amounts of $6,599, $25,996, and $28,655, respectively.

Section 6663(a) provides that if any part of an underpayment is due to fraud there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. See Edelson v. Commissioner, 829 F.2d 828, 833 (9th Cir. 1987), affg. T.C. Memo. 1986-223. Respondent has the burden of proving fraud by clear and convincing evidence. See Rule 142(b). To satisfy this burden, respondent must show (1) that an underpayment exists, and (2) that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise

prevent the collection of taxes. See <u>Parks v. Commissioner</u>, 94 T.C. 654, 660-661 (1990).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. See <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Fraud is never presumed and must be established by independent evidence of fraudulent intent. See <u>Edelson v. Commissioner</u>, <u>supra</u>. Fraud may be shown by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available. See <u>Gajewski v. Commissioner</u>, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. See <u>Stone v. Commissioner</u>, 56 T.C. 213, 223-224 (1971).

In determining whether a corporation has acted fraudulently, the Court must consider the fraudulent intent of the corporation's officers. See <u>DiLeo v. Commissioner</u>, <u>supra</u> at 874. The fraud of a sole or dominant shareholder can be attributed to the corporation. See <u>Benes v. Commissioner</u>, 42 T.C. 358, 383 (1964), affd. 355 F.2d 929 (6th Cir. 1966). "A corporation can act only through the individuals who are its officers or employees." <u>Kahrahb Restaurant, Inc. v. Commissioner</u>, T.C. Memo. 1992-263. Thus, we must consider the fraudulent intent through

the actions of Mr. Golden, petitioner's president and sole shareholder.

To decide whether the fraud penalty is applicable, courts consider several indicia of fraud, or "badges of fraud", which include: (1) Understatement of income; (2) inadequate books and records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) filing false Forms W-4; (8) failure to make estimated payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal illegal activity. See Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). This list is nonexclusive. See Miller v. Commissioner, 94 T.C. 316, 334 (1990).

As an initial matter, petitioner concedes that it overstated its business expenses claimed as deductions on its corporate income tax returns for 1993, 1994, and 1995. Petitioner further concedes that it failed to report income on its 1994 and 1995 income tax returns. These concessions result in petitioner's being liable for deficiencies in income tax for its 1993, 1994, and 1995 tax years, and respondent has therefore met his burden of showing petitioner's understatement of taxes for 1993, 1994, and 1995.

With regard to whether petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes, we must look at Mr. Golden's conduct to determine whether it exhibited any of the "badges of fraud".

Petitioner's ledgers were set up in such a way that neither income nor expenses were recorded. The ledger recorded the loads that the drivers had transported and the gross amounts received by petitioner from the contracting companies as consideration for the transportation of those loads. These gross receipts were then reduced by expenses that petitioner charged to the driver. The driver would then receive a check for the net proceeds. The ledgers did not indicate the cost to petitioner of the various expenses that were deducted from the drivers' checks. The ledgers did not indicate the markup on petitioner's various expenses. Yet Mr. Golden testified that he was aware that there was a markup and aware that petitioner was earning a profit on these items. This profit was not recorded anywhere in petitioner's books or records.

Further, Mr. Golden, on behalf of petitioner, directed Mr. Jackson, petitioner's tax return preparer, to claim that petitioner's expenses were equal to its income, despite the fact that Mr. Golden testified that he had a "fee" that he charged for everything and that he charged the drivers a brokerage

commission. Thus, it is obvious that petitioner's expenses could not have been equal to its income because petitioner was earning a profit due to the markups and the brokerage commission. Additionally, petitioner was unable or unwilling to provide Mr. Jackson with the ledgers or any documentation of petitioner's actual expenses, and Mr. Jackson never reviewed any books, records, or documents of petitioner. Instead, Mr. Golden orally reported to the preparer the gross receipts and expenses of petitioner.

During the 1993, 1994, and 1995 tax years, petitioner reported taxable income of $0. Yet, between 1993 and 1995, Mr. Golden was able to personally draw cash totaling more than $650,000 from petitioner's account. It strains credibility that Mr. Golden thought he could withdraw this sum of money from petitioner, yet honestly believe that petitioner had no taxable income during these years.

Petitioner argues that Mr. Golden's lack of education and accounting knowledge exculpate him from fraudulent intent. A limited education is not, in and of itself, enough to shield a taxpayer from the fraud penalty. See Estate of Temple v. Commissioner, 67 T.C. 143 (1976) (a taxpayer's ignorance and limited education did not shield him from the fraud penalty). The record indicates that while Mr. Golden did not have a college education or an accounting background, his control over

petitioner's books and his establishment of the method of accounting indicates that he had sufficient knowledge of how to account for the income and expense of petitioner.  This is especially true given the fact that Mr. Golden calculated the gross receipts and expense items and simply provided Mr. Jackson, petitioner's return preparer, with the two amounts to be inserted onto the returns.

According to Mr. Golden's own testimony, he was aware that as a consequence of marking up items, petitioner was earning a profit.  Yet he maintains that petitioner was simply a "passthrough" corporation and therefore he did not believe that there was any taxable income.  Mr. Golden, however, knew that petitioner's income was not being reported by some other individual or entity.[4]  We find it difficult to believe that Mr. Golden could identify a corporation as a passthrough entity without knowing that the income and expense items would necessarily have to be passed through to someone or some other entity who would report that income on a tax return.  Nothing in

---

[4] Petitioner resisted attempts by respondent to determine whether any of petitioner's income was reported individually by Mr. and Mrs. Golden.  Petitioner's failure to produce any evidence supporting its allegation that it was a passthrough entity gives rise to the presumption that any evidence regarding this passthrough theory, if produced, would be unfavorable.  See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

the record indicates that the profit being earned by petitioner was being passed through and reported as income by anyone.

Mr. Golden admits that each item of expense charged to the drivers by petitioner was marked up, and he attempts to explain that this markup was not shown as income on its returns because it covered "administrative costs associated with this service." Petitioner introduced no evidence of any administrative costs, and given the fact that the only two people involved in petitioner's business were Mr. and Mrs. Golden, we think it is unlikely that any administrative costs were incurred by petitioner regarding these marked-up expenses.

The fact that petitioner may have deposited all of its income and the fact that petitioner cooperated with respondent does not militate against a finding of fraud.

We agree with respondent that the underpayment in each of the years at issue is attributable to the fraud of Mr. Golden and is therefore attributed to petitioner. The record shows that petitioner engaged in a 3-year pattern of understating income and overstating expenses. Petitioner failed to keep adequate records and concealed the income from petitioner's tax return preparer by providing him only with unsubstantiated income and expense amounts. Mr. Golden possessed sufficient education and knowledge of his duty to report petitioner's income. He provided implausible explanations, such as that petitioner was simply a

"passthrough" entity, yet did not provide any evidence of where this income was "passed on" to.

Based upon these indicia, we hold that respondent has carried the burden of showing by clear and convincing evidence that petitioner's failure to report income for 1993, 1994, and 1995 was fraudulent with the intent to evade tax. Petitioner, on the other hand, has failed to show that any portion of its underpayment was not due to fraud. Accordingly, we sustain respondent's determination that petitioner is liable for the penalties for fraud under section 6663(a) for all the years under consideration.

To reflect the foregoing,

<u>Decision will be entered for respondent.</u>