[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10676

_____

Agency No. 8637-13

JOHN FINNEGAN,
JOAN FINNEGAN,

Petitioners-Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
United States Tax Court

_____

(June 11, 2019)

Before TJOFLAT, and WILLIAM PRYOR, Circuit Judges, and MURPHY, *
District Judge.

TJOFLAT, Circuit Judge:

---

* Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District
of Michigan, sitting by designation.

As many of us do, John and Joan Finnegan ("Taxpayers") hired someone to prepare their tax returns. For eight years, Taxpayers' return preparer included bogus claims on their returns. Taxpayers apparently were oblivious to this. The return preparer was indicted for his fraudulent behavior and pled guilty. Eventually, the IRS came calling: to recover the money it was due all along, the IRS issued a notice of deficiency to Taxpayers for those eight years.

Taxpayers challenged the notice of deficiency in the Tax Court. They argued that the IRS waited too long to collect. Generally, the IRS must make assessments within three years after a tax return is filed.[1] But there's an exception, and the three-year window is suspended, "[i]n the case of a false or fraudulent return with the intent to evade tax."[2] (We call this the fraud exception.) Taxpayers argued that the fraud exception did not apply because the IRS could not meet its evidentiary burden and show that their returns were in fact fraudulent. Taxpayers admitted that their return preparer created fraudulent returns for his other clients, but, Taxpayers said, the IRS could not prove that the return preparer falsely or fraudulently prepared *their* returns. Crucially, Taxpayers conceded—time and time again—that if the Tax Court did find that their returns were fraudulent, the exception to the three-year window would be triggered.

---

[1] 26 U.S.C. § 6501(a).

[2] *Id.* § 6501(c)(1).

2

The case proceeded to trial before the Tax Court.  At trial, the IRS presented prior testimony that the return preparer gave when he testified against one of his former business associates.[3]  In this testimony, the return preparer said every tax return he prepared during the relevant time period included some fraudulent entries.  Additionally, the IRS presented affidavit testimony from the return preparer.  In the affidavit, he swore that he knowingly prepared false tax returns for Taxpayers during the relevant time period.

The Tax Court ruled in favor of the IRS—it found that the return preparer had prepared Taxpayers' returns falsely or fraudulently with the intent to evade tax.  Thus, the Court found, the fraud exception was triggered, and the IRS's notice of deficiency was timely.  Taxpayers filed a motion for reconsideration.  Having lost on the merits of their defense, they pivoted—or did a 180, really.  In the motion, Taxpayers argued—for the first time—that the fraud exception was not triggered because they, the Taxpayers, had not falsely or fraudulently prepared their returns with intent to evade tax.  That is, they claimed that fraud by a tax

---

[3] Two of the return preparer's former business associates come up in this opinion.  The one we just mentioned did not plead guilty and went to trial.  During the former business associate's trial, the return preparer appeared as a witness against the business associate.  As we discuss later, the IRS admitted the return preparer's prior testimony from that trial in the Taxpayers' trial before the Tax Court.  *See infra* Part II.B.  The other former business associate was indicted together with the return preparer, and he (like the return preparer) pled guilty.  This former business associate testified (for the IRS) in the Taxpayers' trial.  *See infra* Part I.B.2 and note 16.

3

preparer (and not a taxpayer) did not trigger the fraud exception. The Tax Court held that Taxpayers waited too long to raise this legal argument and rejected it.

On appeal, Taxpayers raise the same eleventh-hour argument and say that fraud by the tax preparer does not trigger the fraud exception. They also argue that the Tax Court erred by admitting the return preparer's former testimony and affidavit. We reject these arguments and affirm.

We divide our discussion into three parts. First, we set out the facts and procedural history. Next, we consider the arguments on appeal. Finally, we conclude.

## I.

## A.

An informant tipped off the IRS about Taxpayers' return preparer. In turn, the IRS launched an investigation, and here's what the investigation turned up: the return preparer and his associates prepared around 750 to 800 fraudulent returns every year for 11 years. These fraudulent returns had several common features. For example, the returns showed large refunds and partnership losses. The large partnership losses flowed through to the individual returns, and there were deductions for contributions to retirement plans. The bogus returns also noted payments between partnerships and their partners. The addresses for the partnerships changed; as a result, the partnership returns were filed with different

IRS Centers, which lowered the chances of detection.  Finally, many of the same dollar amounts repeated themselves and appeared on several of the fraudulent returns.

Taxpayers' returns fit the mold.  Taxpayers owned a rental property, and their return preparer advised them to run their rental income through a partnership. Taxpayers formed a partnership but never transferred ownership of the rental property to the partnership.  In fact, they didn't even enter into a partnership agreement.  The Taxpayers never wrote checks to the partnership; nor did the partnership write checks to them.  Yet their partnership returns showed a capital contribution from one Taxpayer.

The partnership returns also showed large losses.  One year, the loss was caused in part by a guaranteed payment to the partners.  Expenses also played a role in the loss, and at least two of the claimed expenses used the repeating dollar amounts that were common across many of the bogus returns.  In turn, Taxpayers' individual returns claimed these losses.  Eventually, they began claiming losses from a second partnership: one they had never heard of until the IRS got involved. The addresses of both partnerships changed over the years.  And—unsurprisingly—Taxpayers' refunds increased over time.

The return preparer was indicted and pled guilty to conspiring to defraud the United States and to interfering with the administration of the internal revenue

laws.  The return preparer then testified against one of his former business associates.  During the testimony, the return preparer said that "[e]ach and every one" of the returns he prepared during the relevant time "contain[ed] some fraudulent entries."  Taxpayers were not part of the grand jury investigation into the return preparer and his associates.  Nor were Taxpayers' returns used to support the indictments against the return preparer and his associates.

Roughly five years after the dust settled in the criminal proceedings, the IRS came calling: it issued a notice of deficiency to Taxpayers for the eight years that Taxpayers submitted fraudulent returns.  The IRS also tacked on a 20% accuracy-related penalty for each year based on Taxpayers' negligence.

### B.

### 1.

Taxpayers challenged the notice of deficiency and filed a petition in the Tax Court.  In the petition, Taxpayers claimed the IRS had missed the three-year collection window and thus was too late.  The IRS answered and alleged that the fraud exception to the three-year window applied because the return preparer had fraudulently prepared Taxpayers' returns with intent to evade tax.

The IRS relied on the Tax Court's decision in *Allen v. Commissioner*, 128 T.C. 37 (2007), to support its reading of the fraud exception.  In *Allen*, the Tax Court held that the fraud exception is triggered, and the three-year window

suspended, by the return preparer's fraudulent intent.  128 T.C. at 37.  The petitioner argued that the fraud exception was triggered only by the taxpayer's fraudulent intent, and the Court expressly rejected that argument.  *Id.* at 39–40.  It explained, "The statute keys the extension to the fraudulent nature of the return, not to the identity of the perpetrator of the fraud," and the Court declined to read "of the taxpayers" into the statute.  *Id.* at 40.

The IRS didn't hide the *Allen* ball, either; it cited *Allen* again and again. During informal discovery, the IRS responded to a discovery request and explained that it was not barred by the statute of limitations, and it cited *Allen* as authority for that statement.  During pretrial motion practice, the IRS cited *Allen* five more times.  It cited *Allen* again in its pretrial memorandum and in both briefs that it filed after the trial.

Taxpayers' defense, at least before the Tax Court handed down its decision, was this: the IRS didn't have enough evidence to show that Taxpayers' fraudster return preparer had falsely or fraudulently prepared their returns.  Thus, according to Taxpayers, because there was no showing of fraud, the fraud exception was not triggered.  Indeed, this is the argument they made in their opening brief, under the heading "because Respondent failed to prove fraud by clear and convincing evidence, the period of limitations within which to assess additional taxes is time barred."  And to support their argument, Taxpayers relied on *Eriksen v.*

7

*Commissioner*, 104 T.C.M. (CCH) 46, 2012 WL 2865875 (2012).  As here, the

IRS in *Eriksen* argued that the fraud exception was triggered based on the

fraudulent intent of the petitioners' return preparers.  2012 WL 2865875, at \*1.

And as here, the issue before the Tax Court in *Eriksen* was "whether [the IRS]

ha[d] clearly and convincingly proven that any of petitioners' returns w[ere] false

or fraudulent."  *Id.*  The Court in *Eriksen* found that the IRS met its burden for

some petitioners but not for others.  *Id.*  So, Taxpayers relied on *Eriksen* and

argued that the case against them was most like the case against the petitioners for

which the IRS came up short in proving fraud.  Doing so, Taxpayers never

challenged *Allen* as an appropriate hook for triggering the fraud exception.

Before the Tax Court issued its decision, Taxpayers never challenged *Allen*

or its logic at all.  They stipulated before trial that

> [t]he only issue in dispute is whether [Taxpayers'] individual income
> tax returns and partnership tax returns for the years at issue were false
> and fraudulent and prepared with the intent to defeat or evade tax. . . .
> If the answer is [yes], then the asserted deficiencies and accuracy-
> related penalties will not be challenged by [Taxpayers].

And during their opening statement at trial, Taxpayers said this:

> So any fraud that may be proved by [the return preparer] . . . it's
> attributed to the [Taxpayers] personally, and they're [the IRS] alleging
> that it's a fraudulent return.  And under *Allen v. Commissioner*,
> therefore, it would be proper for this Court to find fraud because . . .
> of the preparer's activities.
> But we don't have any evidence that was related by [the IRS] to
> the effect that [the] [fraudulent] activity also concerned [Taxpayers],
> as well as [the return preparer's] other numerous clients.

8

Finally, resolving any doubt about Taxpayers' position on the *Allen* case, the Tax Court asked Taxpayers—point blank—whether they contested it:

THE COURT:    There is no objection as to the statute of limitations in this case; is that correct?

[TAXPAYERS]:    Yes, there is.

THE COURT:    There is.  And what's the basis for the objection?

[TAXPAYERS]:    The tax years are 1994 through 2001.  So under [§] 6501(a), that's beyond the three-year statute of limitations.  [The IRS] alleges that under 6501(c), if there's clear and convincing evidence of fraudulent intent or filing with intent to evade, therefore the statute of limitations will not be an issue. . . .

THE COURT:    Has not the Court decided that issue as to the statute of limitation if there's fraud on behalf of the preparer of the return?

[TAXPAYERS]:    Yes.  We admit to the *Allen* case.  Right.  The Court has decided that.  But we're not saying that—

THE COURT:    So you're still objecting?

[TAXPAYERS]:    We're objecting—we're not conceding that [the return preparer's] fraud for his dozens of other clients was also perpetrated in the case of the [Taxpayers].

THE COURT:    So you do not admit that there was fraud on this return?

[TAXPAYERS]:    Correct.

9

THE COURT:      Even by [the return preparer].

[TAXPAYERS]:    Correct.

THE COURT:      And as I understand that the Court has decided that the fraud of a preparer is sufficient—

[TAXPAYERS]:    That's the law, unfortunately, yes.

THE COURT:      Do you contest that law?

[TAXPAYERS]:    No, Your Honor.

2.

The parties tried the case before the Tax Court.  The IRS called four witnesses: the special agent who investigated the Taxpayers' return preparer, the return preparer's former business associate (the one who pled guilty), and the Taxpayers themselves.  The IRS did not call the return preparer as a witness, but it wasn't for lack of trying.

The IRS began trying to contact the return preparer eight months before the trial.  It tried to serve the return preparer with a subpoena 10 times; each time was unsuccessful.  Unable to call the return preparer as a witness, the IRS introduced two of his prior statements.  First, the IRS presented prior testimony that the return preparer gave during the criminal trial of his former employee.  There, he said that every tax return he prepared during the relevant time period included some fraudulent entries.  Second, the IRS admitted affidavit testimony from the return preparer.  In the affidavit, he swore that he knowingly prepared false tax returns for

10

Taxpayers during the relevant time period.  Taxpayers objected and argued that both statements were inadmissible hearsay.

After the trial, both sides filed simultaneous opening and answering briefs. After the briefing was finished, the case remained submitted for almost two years before the Tax Court issued its decision.  About halfway into the two-year period, the IRS sent a letter to the Court and copied Taxpayers.  In the letter, the IRS brought to the Court's (and Taxpayers') attention the Federal Circuit's decision in *BASR Partnership v. United States*, 795 F.3d 1338 (Fed. Cir. 2015).  In *BASR*, a fractured Federal Circuit panel declined to follow *Allen* and held that the fraud exception is triggered only when the taxpayer acts with intent to evade tax.  795 F.3d at 1346–47.  Even after this decision, and after the IRS sent the letter, Taxpayers never asked the Tax Court to reconsider *Allen* and made no *Allen*-related arguments whatsoever.

3.

The Tax Court found in favor of the IRS.  It took up the evidentiary issue first and held that the return preparer's prior witness testimony and affidavit testimony fell within an exception to the ban on hearsay.  *Finnegan v. Comm'r*, T.C.M. (RIA) 2016-118, 2016 WL 3360447, at *2 (2016).

Turning to the substantive issue, the Court framed the question before it this way: "We must decide whether [the IRS] has proved that [Taxpayers'] returns

11

were prepared falsely or fraudulently with the intent to evade tax." *Id.* at \*6.  Of course, this just parroted the way the parties had framed the issue before, during, and after trial.  Before turning to the meat of the issue—whether the returns were fraudulent or not—the Court explained in a single brief paragraph that the fraud exception applied because *Allen* held that the return preparer's fraud was enough to trigger the exception.  *Id.*

On the topic of whose fraud triggers the exception, the Court also flagged (using a "but see" introductory citation signal) a Court of Federal Claims decision that declined to follow *Allen*.  *Id.* (citing *BASR P'ship ex rel. Pettinati v. United States*, 113 Fed. Cl. 181 (2013)).  While Taxpayers' case was submitted, but before the Court issued its decision, a fractured Federal Circuit panel affirmed the Court of Federal Claims decision.  *See BASR P'ship v. United States*, 795 F.3d 1338 (Fed. Cir. 2015).  (Remember, the IRS sent a letter to the Court and Taxpayers that notified everyone of the Federal Circuit's decision.)  Although the Tax Court flagged these two cases that rejected *Allen*, the Court explained in a footnote that those cases provided "no reason to revisit" *Allen*.  *Finnegan*, 2016 WL 3360447, at \*6 n.6.  This is an unremarkable conclusion because, after all, the parties never asked the Court to reconsider *Allen*.  *See id.* ("Additionally, the parties have not cited <u>BASR P'ship</u> and do not contend we should revisit <u>Allen</u>.  Thus, <u>Allen</u> is

12

controlling precedent in the instant case, and we do not revisit the analysis and conclusion in that Opinion.").

The Court did call the dissenting opinion in *BASR* "persuasive," and it pointed out that the concurring opinion in *BASR* did not adopt the majority opinion's analysis; instead it relied on a different statute to reach the same answer as the majority. *See id.* The Court noted the statute that the concurring opinion relied on was not at issue in this case. *Id.* Thus, the Court said that it was unclear what interpretation of the fraud exception would apply in the Federal Circuit when the statute relied on by the concurring opinion was not at issue. *Id.* Despite these passing comments about the decision in *BASR*, the Court did not consider whether *BASR* undermined *Allen*. In fact, to use the Court's own word, it did not "revisit" *Allen* at all.

Finally, the Court considered whether the IRS had proven fraud with clear and convincing evidence. *Id.* at *7. The Court found that it had: it explained that Taxpayers' returns had many of the common elements that the return preparer used when filling out bogus returns. *See id.* at *8. It rejected Taxpayers' *Eriksen* argument and found that the IRS had shown more than a "suspicion of fraud." *Id.* The Court explained that Taxpayers' case was more like the *Eriksen* petitioner for which the IRS met its evidentiary burden. *Id.* Thus, the Court held that Taxpayers owed the deficiencies and accuracy-related penalties. *Id.* at *9–10.

4.

After the Court entered its decision, Taxpayers got new lawyers. And with new lawyers came brand new legal arguments. Armed with new lawyers and fresh ideas, Taxpayers filed a motion for reconsideration under Rule 161 of the Tax Court Rules of Practice and Procedure. When deciding a motion to reconsider under Rule 161, Tax Courts look to the Federal Rules of Civil Procedure and case law applying the Federal Rules.[4] Taxpayers claimed that Rule 161's "closest corollary" in the Federal Rules is Rule 60(b).[5] And they relied on Rule 60(b)'s catchall provision—"any other reason that justifies relief," Fed. Rule Civ. P. 60(b)(6)—in asking for relief from the Tax Court's final decision. In the motion, they argued (1) that the Tax Court erred in deciding not to revisit *Allen* and (2) that the Tax Court should overrule *Allen*.

---

[4] *See* Tax Ct. R. 1(b) ("Where . . . there is no applicable rule of procedure, the Court . . . may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand."); *Bedrosian v. Comm'r*, 144 T.C. 152, 156 (2015) (noting that the Court can look to the Federal Rules when considering a motion to reconsider under Rule 161); *Etter v. Comm'r*, 61 T.C.M. (CCH) 1772, 1991 WL 10967 (1991) ("[W]e have held that cases interpreting [Rule 60 of the Federal Rules of Civil Procedure] are precedents in regard to motions for reconsideration . . . under Tax Court Rule[] 161 . . . .").

[5] Indeed, Tax Court precedent supports Taxpayers' argument. *See Bedrosian*, 144 T.C. at 156 ("The closest corollary to our Rule 161 is rule 60(b) of the Federal Rules of Civil Procedure."). On appeal, the IRS argues that Taxpayers' motion for reconsideration is more similar to Rule 59(e) than Rule 60(b) because the motion asked for reconsideration of a substantive issue and did not raise an exclusively collateral question about what's due because of the judgment. Because Taxpayers did not appeal the Court's denial of its motion, we need not decide which rule is the best fit.

14

Taxpayers rightly anticipated that their *Allen* argument might run into a waiver problem based on their former lawyer's admission that they "admit to the *Allen* case" and do not contest it. So, they tried arguing that it would have been unethical to ask the Tax Court to overrule *Allen* before the Federal Circuit's decision in *BASR*. Relying on Rule 3.1 of the Model Rules of Professional Conduct,[6] Taxpayers claimed there was no "basis in law" to argue that *Allen* should be overruled. There was no basis in law, they said, because the Federal Circuit hadn't filed its opinion and because no party had filed a brief in that case.[7] That is, Taxpayers claimed they didn't make the argument because their ethical duties didn't allow them to. They also said—without any support in the record—that the Court "steered" them away from contesting *Allen*.

Next, Taxpayers claimed that although they didn't argue that *Allen* should be overruled, the Court considered the question anyway. Remember, the Court explicitly said that it did not "revisit" *Allen*. *Finnegan*, 2016 WL 3360447, at *6

---

[6] Model Rule 3.1 says this: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Model Rules of Prof'l Conduct r. 3.1 (Am. Bar Ass'n 2016).

[7] But as Taxpayers conceded, the decision from the Court of Federal Claims was handed down almost six months before Taxpayers' case went to trial. And the Court of Federal Claims adopted the same interpretation that Taxpayers advance here. *BASR P'ship*, 113 Fed. Cl. at 192–94. But they discounted this decision because it was not binding precedent on the Tax Court. This is an odd distinction because the Federal Circuit's decision is not binding on the Tax Court, either. Additionally, Taxpayers apparently think a party cannot make a good faith argument that a case should be overruled unless there is binding authority supporting that argument. Of course, that's incorrect.

15

n.6. Thus, the Court's only decision on whether it should overrule *Allen* was that it would not, in fact, decide at all. So, where did Taxpayers come up with the argument that the Court actually did decide whether to overrule *Allen*? They plucked a word from the Court's footnote that we explained above: Taxpayers said that the Court decided whether to overrule *Allen* because the Court called the dissenting opinion in *BASR* "persuasive." They even took one step further and faulted the Court for not asking the parties to file supplemental briefs to address the Federal Circuit's opinion.

Finally, Taxpayers tried to sidestep the waiver issue altogether and argued that the Federal Circuit's opinion qualified as a decision from a U.S. Court of Appeals that changed the law and thus affected the issues decided in this case. And under Eleventh Circuit precedent, a "clear-cut change in the law" will sometimes—but not always—justify granting relief under Rule 60(b)(6). *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987). Of course, decisions from the Federal Circuit are not binding on the Tax Court. *See* 26 U.S.C. § 7482(a)(1).[8]

---

[8] Taxpayers also argued that relief under Rule 60(b) was appropriate because the Tax Court's "continuing endorsement of *Allen* in this case was an error of law that tainted the proceedings." Thus, Taxpayers claimed, granting Rule 60(b) relief to fix this legal error would "do justice." They never explained why this argument was not waived.

16

The IRS argued that Taxpayers waived any challenge to *Allen* by not raising it before the Court's decision.[9] The Court agreed and held that it would be improper to grant the motion because new legal theories should not be raised in a motion for reconsideration.[10] The Court highlighted that Taxpayers had multiple chances to challenge *Allen*—and could have done so in good faith, consistent with their ethical obligations—but chose not to.

## II.

Taxpayers make two arguments on appeal. First, they argue that the fraud exception is triggered only when the taxpayer intended to evade tax; thus, the Tax Court allegedly erred when it found that the fraud exception was triggered by the return preparer's intent to evade tax. Second, Taxpayers renew their evidentiary objections and argue that the Court abused its discretion by admitting the return preparer's out-of-court statements.

"[W]e review Tax Court decisions 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.'" *L.V.*

---

[9] It also argued that the motion would fail on the merits because there was no change in controlling law based on the Federal Circuit's decision in *BASR* and because there were no other extraordinary circumstances that warranted relief under Rule 60(b).

[10] Alternatively, the Court denied the motion on the merits. It noted that the Federal Circuit's opinion in *BASR* was not binding authority and was distinguishable from this case. Thus, the Court concluded that there is no error of law in *Allen*'s holding.

17

*Castle Inv. Grp., Inc. v. Comm'r*, 465 F.3d 1243, 1245 (11th Cir. 2006) (quoting 26 U.S.C. § 7482(a)(1)).

We consider each of Taxpayers' arguments separately.

### A.

Taxpayers argue that the fraud exception is triggered only when the taxpayer intends to evade tax, not when the return preparer intends to evade tax. In other words, they say that *Allen* was wrongly decided. The Tax Court held that it would be inappropriate to grant relief based on this argument because Taxpayers raised it for the first time in their motion for reconsideration.

Taxpayers waived this argument. They knew that the IRS was relying on *Allen* and its holding, and they chose not to challenge it. They didn't challenge it before, during, or after trial. In fact, they explicitly told the Tax Court they admitted to *Allen* and were not challenging it. We cannot imagine a more obvious waiver. Rather than challenge *Allen*, Taxpayers relied on a different defense: it put the IRS to its burden and claimed it couldn't prove fraud—by the return preparer— with clear and convincing evidence. As we said above, the Tax Court looks to the Federal Rules and case law applying the Federal Rules when ruling on a motion for reconsideration. And our precedent makes clear that motions under Rule 60(b) and Rule 59(e) should not be used to raise new arguments that could have been raised

18

sooner but consciously were not.[11] *See Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1357 (11th Cir. 2014) ("Plaintiffs are not entitled to Rule 60(b)(6) extraordinary relief because they did not [make this argument] before and they offer no credible justification for that oversight now."); *Hamilton v. Sec'y, Fla. Dep't of Corr.*, 793 F.3d 1261, 1266–67 (11th Cir. 2015) (per curiam) ("It is established beyond dispute that Rule 59(e) cannot be used to 'raise argument[s] . . . that could have been raised prior to the entry of judgment.'" (first alteration in original) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007))); *Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990) ("A [lower] court's denial of reconsideration is especially soundly exercised when the party has failed to articulate any reason for the failure to raise an issue at an earlier stage in the litigation.").

Taxpayers claim they did not waive the issue, and they make two arguments to explain why. First, Taxpayers argue they did not waive the issue because it's not waivable. When an issue is before a court, Taxpayers say, the court has an independent duty to apply the correct law to the facts, even if neither party argues for the correct application of the law. Here, Taxpayers argued that the IRS waited too long to collect, which, according to Taxpayers, means the statute-of-limitations

---

[11] Again, we need not decide whether Taxpayers' motion before the Tax Court is more like a motion under Rule 60(b) or Rule 59(e).

issue was properly before the Tax Court. Thus, Taxpayers claim the Court had an independent duty to apply the correct interpretation of the law—the fraud exception—to the facts.

We disagree. The statute-of-limitations issue wasn't properly before the Court. At least the part that Taxpayers now care about wasn't, anyway. Before the Tax Court, Taxpayers claimed the fraud exception wasn't triggered—meaning the limitations period had run—because the IRS couldn't prove fraud. Period. The statutory-interpretation question of whose fraud triggers the exception was not before the Court until Taxpayers filed their motion for reconsideration. But this last-ditch effort was too little too late, and the Court denied the motion on waiver grounds.

Taxpayers' argument assumes that, before a court can apply a statute, it has an independent duty to interpret the statute exhaustively. In turn, courts would find new answers to questions the parties have already agreed on, or courts would find answers to questions that no party even raised. If we accepted this argument, we would require courts to decide issues outside the adversarial process.[12] We reject Taxpayers' argument.

---

[12] Indeed, Taxpayers claim the Tax Court should have independently interpreted the fraud exception, even though the parties never briefed the issue because they agreed that *Allen* controlled. And of course, "the adversarial process leads to better, more accurate decision-making." *Kaley v. United States*, 571 U.S. 320, 338, 134 S. Ct. 1090, 1103 (2014).

Second, Taxpayers argue that they did not waive the issue because the Tax Court did in fact stamp its own approval on *Allen*. Taxpayers can tell that the Court did so because it called the dissenting opinion in the Federal Circuit's decision "persuasive." But as we explained above, this was nothing more than a passing comment, as the Court explicitly said that it was *not* revisiting *Allen*. This argument fails.

\*    \*    \*

Taxpayers' best argument is that we should exercise our discretion and not enforce the waiver doctrine. The general rule is that we will not consider an issue raised for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). "The reason for this prohibition is plain: as a court of appeals, we review claims of judicial error in the trial courts." *Id.* But our "power to entertain an argument raised for the first time on appeal is not a jurisdictional one; thus we *may* choose to hear the argument under special circumstances." *Id.* at 1332.

We have carved out five special circumstances when we will consider an issue first raised on appeal: (1) when the issue "involves a pure question of law" and "refusal to consider it would result in a miscarriage of justice," (2) when "the appellant raises an objection to an order which he had no opportunity to raise at the [lower] court level," (3) when "the interest of substantial justice is at stake," (4)

21

when "proper resolution is beyond any doubt," and (5) when the "issue presents significant questions of general impact or of great public concern." *Id.* (quoting *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2001)).  Taxpayers argue that first and fifth circumstances apply here.

We begin with the first.  The fraud-exception issue is a pure question of law, but our refusal to consider it will not result in a miscarriage of justice.  Quite the opposite.  "A 'miscarriage of justice' is a '[d]ecision or outcome of [a] legal proceeding that is prejudicial or inconsistent with [the] substantial rights of [a] party.'"  *Wright*, 270 F.3d at 1342 n.8 (alterations in original) (quoting *Miscarriage of justice*, *Black's Law Dictionary* 999 (6th ed. 1990)).

If we consider this issue and allow Taxpayers to make an argument that directly contradicts the position they took before the Tax Court, it's the IRS that will be prejudiced.  The IRS litigated this case for more than three years while relying on a fundamental assumption: under *Allen*, the fraud exception is triggered so long as the IRS can prove that the return preparer intended to evade tax, even if the taxpayer had no idea his return preparer was a fraudster.  Relying on this assumption—this state of the law—the IRS focused a lot of attention on the return preparer and his method for creating bogus returns.  It built its case around the return preparer's method, and it showed that Taxpayers' returns were the product of this method.  The IRS focused less on Taxpayers themselves.  The most

22

important admission the IRS got from Taxpayers' testimony likely was that their returns had entries they didn't recognize. And the IRS didn't need much more from Taxpayers. After all, it wasn't concerned with Taxpayers' intent. And why would it have been?

If we consider this issue, the IRS would have to retry the case, and that case would look very different from this one. It would have to focus much more on mounting circumstantial evidence showing Taxpayers' intent. Of course, this means a lot of the time and resources that went into litigating this case would be wasted. And we have said that our reluctance to consider new issues on appeal "derives primarily from 'the needs of judicial economy and the desirability of having all parties present their claims in the court of first instance.'" *See Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 990 (11th Cir. 1982) (quoting *Empire Life Ins. Co. of Am. v. Valdak Corp.*, 468 F.2d 330, 334 (5th Cir. 1972)); *see also Blue Martini Kendall, LLC v. Miami Dade County*, 816 F.3d 1343, 1349 (11th Cir. 2016) ("[W]e have been more likely to exercise discretionary jurisdiction over an issue not raised in the [lower] court when . . . the appeal stems from a summary judgment ruling, not after trial, because a remand from summary judgment proceedings involves less strain on judicial resources and does not impair judicial efficiency as dramatically."). Taxpayers will not be prejudiced by our failure to consider this issue.

23

Nor does our failure to consider the issue violate Taxpayers' substantial rights. We're simply not allowing Taxpayers to correct a strategic decision that ultimately failed. Their argument is an afterthought, and we generally don't consider afterthoughts first raised on appeal unless there is some manifest injustice. *See Roofing & Sheet Metal Servs., Inc.*, 689 F.2d at 990 (explaining that the waived argument was not an "afterthought," which weighed in favor of the Court exercising its discretion and considering the issue). Here, there's no manifest injustice. Taxpayers consciously decided not to challenge *Allen* and opted to put the IRS to its burden. Allowing them to challenge *Allen*—with the benefit of hindsight—would sandbag the IRS. *See In re Sealed Case*, 552 F.3d 841, 852 (D.C. Cir. 2009) (Edwards, J., concurring) (noting that one reason courts enforce waiver rules is to "prevent one party from sandbagging another by raising new claims on appeal"). We decline to exercise our discretion and consider the issue under the first special circumstance.

Next, Taxpayers ask us to exercise our discretion and consider the issue because it is a significant legal question of broad impact and great public concern. We do not doubt that the legal question is significant. And we agree that it could have broad impact and might be of some public concern. That said, these interests fall well short of outweighing the interests that counsel against considering the issue, for the reasons we just explained. "Too often our colleagues on the [lower]

24

courts complain that the appellate cases about which they read were not the cases argued before them.  We cannot allow [Taxpayers] to argue a different case from the case [they] presented to the [lower] court." *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998).  Thus, we decline to exercise our discretion and consider the issue under the fifth special circumstance.

## B.

Taxpayers argue that the Tax Court abused its discretion when it admitted the prior testimony that the return preparer gave when he appeared as a witness against his former business associate.[13]  In this testimony, the return preparer said every return he prepared during the relevant period contained some fraudulent entries.  Taxpayers also argue that the Tax Court abused its discretion when it admitted the return preparer's affidavit testimony.  There, the return preparer swore that he knowingly prepared false returns for Taxpayers.  At trial, Taxpayers argued that the prior statements were inadmissible hearsay.  The Tax Court agreed that the statements were hearsay, but it held that they both satisfied the statement-against-interest exception to the ban on hearsay.  *Finnegan*, 2016 WL 3360447, at \*2.

The statement-against-interest exception has three elements: (1) the declarant must be unavailable to testify, (2) the statement must be "so contrary to

---

[13] We review evidentiary decisions for abuse of discretion.  *See Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017).

25

the declarant's proprietary or pecuniary interest" that that a reasonable person would have made the statement only if he believed it was true, and (3) the statement must be "supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."[14]  *See* Fed. R. Evid. 804(b)(3).  Taxpayers challenge the second and third elements.

The Tax Court held that the second element was met because the return preparer's "statements expose him to criminal liability and civil liability from former clients." *Finnegan*, 2016 WL 3360447, at *2.  The Court noted that at least one former client had already initiated legal proceedings against the return preparer based on the testimony he gave during his former business associate's trial.  *Id.*

Taxpayers argue that the Court overlooked the timing of the return preparer's statements.  The return preparer made these statements after he had been

---

[14] When the parties briefed this issue before the Tax Court, they assumed the third element applies in this case.  Apparently taking its cue from the briefing, the Tax Court then found that the return preparer's statements were corroborated. *Finnegan*, 2016 WL 3360447, at *2. On appeal, the parties continue to assume the third element applies.  But there's at least some reason to question that assumption.  By the Rule's own text, the corroborating-circumstances element applies only when the hearsay statement is offered in a criminal case.  And the case before the Tax Court was not a criminal case.  At least one of our sister circuits has held that the corroborating-circumstances element applies in civil cases, but it did so before the 2010 amendments that added the "if it is offered in a criminal case" language. *Am. Auto. Accessories, Inc. v. Fishman*, 175 F.3d 534, 541 (7th Cir. 1999).  In any event, we need not resolve this question because neither party has argued that the third element is inapplicable in this case, and the answer wouldn't affect our decision because we hold that the corroborating-circumstances element is met.

indicted and signed a plea deal.  This timing, Taxpayers say, "leads to the logical inference that his statements were made as part of his cooperation-guilty plea."  So, Taxpayers claim that these statements were made in a plea agreement that likely resulted in a more favorable resolution of his criminal matters, meaning these statements were actually in the return preparer's best interest.  But the return preparer was not given immunity in exchange for his cooperation.  Nor was he promised anything in particular for agreeing to cooperate against his former business associate.  Thus, any crimes he admitted to in these statements were against his penal interest because the sentencing court could have taken these admitted-to crimes into account and given him a harsher sentence.[15]  *See United States v. Scopo*, 861 F.2d 339, 348 (2d Cir. 1988) ("In general a plea of guilty is a statement against the penal interest of the pleader for the obvious reason that it exposes him to criminal liability."); *id.* ("If, however, a pleading defendant had an agreement with the government or with the court that he would not be punished for the crimes to which he allocuted, then that allocution would not subject him to criminal liability and would not constitute a statement against his penal interest within the meaning of Rule 804(b)(3).").  Taxpayers' argument fails.

---

[15] We also point out that the IRS primarily used the return preparer's prior testimony as it related to the return preparer's *own* behavior.  It was not using the return preparer's hearsay statements to implicate another person.

27

Moving to the third element, the Tax Court held that it was met because the statements were "corroborated by [Taxpayers'] testimony regarding [the return preparer's] role in the preparation of the returns, [the return preparer's former business associate's] testimony regarding office routines, and [the investigating agent's] testimony about [the return preparer's] modus operandi." *Finnegan*, 2016 WL 3360447, at *2.

Taxpayers fall back on the same argument and claim that any trustworthiness is undermined because the return preparer made these statements in connection with a cooperation-guilty plea. We disagree and find the corroborating circumstances strongly suggest that the statements are trustworthy.

The Tax Court did not abuse its discretion by admitting the return preparer's out-of-court statements.[16]

### III.

The judgment of the Tax Court is

**AFFIRMED.**

---

[16] Taxpayers also argue that the Tax Court abused its discretion by admitting live witness testimony from the investigating agent and the return preparer's former business associate (the one who pled guilty). They claim the testimony was irrelevant because only a taxpayer's intent triggers the fraud exception. Because we hold that Taxpayers waived any challenge to *Allen*, it controlled, and the testimony from these witnesses was relevant to the issue whether Taxpayers' returns were prepared with intent to evade tax.