[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-14039

_____

GLADE CREEK PARTNERS, LLC,
SEQUATCHIE HOLDINGS, LLC,
TAX MATTERS PARTNER,

Petitioners-Appellants,

*versus*

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court
Agency No. 22272-17

_____

Before NEWSOM, BRASHER, and ED CARNES, Circuit Judges.

PER CURIAM:

After Glade Creek Partners donated a conservation easement, it claimed a tax deduction for the easement's fair market value. The Tax Court ruled that, under I.R.C. §§ 170(e) and 724(b), Glade's deduction was limited to Glade's adjusted basis in the easement—*i.e.*, the fair market value of the easement, less the amount of gains that Glade would have made from selling the easement. On appeal, Glade argues (1) that §§ 170(e) and 724(b) don't apply to its easement deduction at all and (2) that, even if these provisions do apply, they don't limit the amount of its deduction. Both claims fail, so we **AFFIRM** the Tax Court's judgment.

**I**

This appeal concerns a conservation easement that Glade Creek Partners, LLC donated to Atlantic Coast Conservancy in 2012. Glade claimed a charitable-contribution deduction for the entire fair market value of the easement. The IRS contends that Glade can deduct only a limited part of the easement's fair market value.

We begin by providing some background about the easement and the property that it encumbers.

In 2006, International Land Consultants, Inc. purchased nearly 2,000 acres of undeveloped land in Tennessee, which it planned to develop and market as a residential vacation

community. In part because of the 2008 economic recession, however, ILC's plans went awry, and it faced serious financial problems. One of ILC's three owners walked away from the project. Facing pressure from the bank that had funded ILC's infrastructure loans, the company's remaining two owners, as well as its real-estate advisor, organized Hawks Bluff Investment Group, Inc., an S corporation, to assume ILC's debt in exchange for some of ILC's land. But even after Hawks Bluff assumed ILC's debt, financial pressures persisted, so Hawks Bluff pursued a conservation-easement transaction to pay off part of its debt. To execute this transaction, in 2012, the owners of Hawks Bluff organized Glade, to which Hawks Bluff contributed about 1,313 acres of land. Two months later, Glade donated a conservation easement on this land—which we'll call the Easement Property—to Atlantic Coast Conservancy.

At the end of that year, Hawks Bluff stated on its tax return that it was a real-estate dealer and reported the Easement Property on the line for "inventory" items. It reported a decrease in inventory to account for the transfer of the Easement Property to Glade. Meanwhile, Glade claimed a charitable-contribution deduction for the entire fair market value of the easement. The IRS disallowed Glade's easement deduction.

After a trial, the Tax Court likewise disallowed the easement deduction, reasoning that the easement's conservation purposes were not protected "in perpetuity" as defined by Treasury Regulation § 1.170A-14(g)(6)(ii). *See* I.R.C. § 170(h)(5)(A). But in 2021, this

Court held that regulation invalid. *See Hewitt v. Commissioner,* 21 F.4th 1336, 1339 (11th Cir. 2021). Accordingly, we remanded this case so that the Tax Court could address the IRS's alternative arguments for disallowing Glade's easement deduction. *See Glade Creek Partner, LLC v. Comm'r of Internal Revenue*, No. 21-11251, 2022 WL 3582113, at *3 (11th Cir. Aug. 22, 2022).

On remand, the IRS conceded that Glade was entitled to an easement deduction. So the sole issue before the Tax Court was whether Glade could deduct the entire fair market value of the easement or whether, instead, the amount of the deduction was limited to Glade's adjusted basis in the easement. That issue turned on whether the Easement Property was an inventory item or a capital asset in the hands of Hawks Bluff, the partner that contributed the Easement Property to Glade. The Tax Court held that the Easement Property was an inventory item and that the deduction was therefore limited to Glade's adjusted basis.

This is Glade's appeal.

## II

The two provisions of the I.R.C. at the heart of this appeal are §§ 170(e) and 724(b). Section 170 of the I.R.C. governs deductions that taxpayers can take for charitable contributions. Subsection (e) provides, as a general matter, that when a taxpayer seeks to deduct a charitable contribution of property, he must reduce the deduction by "the amount of gain which would not have been long-term capital gain . . . if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of

such contribution)." § 170(e)(1)(A).  In other words, the taxpayer must reduce the deduction by any short-term capital gains or ordinary income that would have resulted from a hypothetical sale of the property.  Long-term capital gains are gains resulting from the taxpayer's sale of a capital asset that it held for longer than a year. I.R.C. § 1222(3).  Ordinary income is a gain resulting from the taxpayer's sale of an inventory item.  *Id.* § 1231(b)(1).

Section 724 governs the characterization—*i.e.*, as ordinary income or as a capital gain—of gains that result from property contributed to a partnership by one of its partners.  Subsection (b) provides that, in the case of property that was an inventory item in the hands of the partner who contributed it, any gain is considered ordinary income for a five-year period starting on the date of contribution.

The Easement Property was contributed to Glade—a partnership—by Hawks Bluff—one of its partners.  Accordingly, to determine the character of the Easement Property, the Tax Court turned to § 724(b).  *Glade Creek Partners, LLC v. Comm'r of Internal Revenue*, T.C.M. (RIA) 2023-082, at *8 (T.C. 2023).  The Tax Court found that the Easement Property was inventory in the hands of Hawks Bluff when it contributed the property to Glade in September 2012.  *Id.* at *26.  Accordingly, the Tax Court concluded that, if Glade had sold the Easement Property in December 2012, it would have yielded ordinary income under § 724(b).  *Id.*  And because the Easement Property would have yielded ordinary income had Glade sold it in December 2012, so too would the easement itself

have yielded ordinary income.  Therefore, the Tax Court held that, under § 170(e), the amount of Glade's easement deduction was limited by the amount that Glade would have gained if it had sold the easement in December 2012.  *Id.* at *26–27.

Glade challenges the Tax Court's holding on two grounds. First, it contends that §§ 170(e) and 724(b) don't apply to its easement deduction at all.  Second, Glade argues that, even if these sections do apply, the Tax Court erred in finding that they limit the amount of its deduction because, it contends, the Easement Property was a capital asset.  We'll discuss each of Glade's challenges in turn.

**A**

First up are Glade's broad-based challenges to the statutory framework.  Underlying the Tax Court's decision is the premise that §§ 170(e) and 724(b) provide the proper framework for determining the amount of Glade's easement deduction.  For the first time on appeal, Glade challenges that premise, arguing that § 170(e) doesn't apply to conservation easements—which, Glade says, are governed solely by a different provision, § 170(h)—and that § 724(b) is inapplicable because Glade still owns the Easement Property.

"This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (citation modified).  That rule is not jurisdictional, however, and "we *may* choose to hear the

argument under special circumstances." *Id.* at 1332. Glade insists that two such circumstances are present here: (1) "the issue 'involves a pure question of law' and 'refusal to consider it would result in a miscarriage of justice,'" and (2) "the 'issue presents significant questions of general impact or of great public concern.'" *Finnegan v. Comm'r of Internal Revenue*, 926 F.3d 1261, 1271–72 (11th Cir. 2019) (quoting *Access Now*, 385 F.3d at 1332).

We disagree. First, although Glade's challenges to the statutory framework are purely legal, refusal to consider them would not result in a miscarriage of justice. "A miscarriage of justice is a decision or outcome of a legal proceeding that is prejudicial or inconsistent with the substantial rights of a party." *Id.* at 1272 (citation modified). Our refusal to consider Glade's new claim will not prejudice it. Glade has known since the beginning of this litigation that §§ 170(e) and 724(b) were implicated. The IRS laid out this statutory framework in its pretrial memorandum, post-trial opening and answering briefs, and supplemental brief on remand. Glade could have raised its challenges to the statutory framework at any of these points, but it failed to do so. Allowing Glade to challenge the statutory framework now would, if anything, prejudice the IRS.

Second, Glade asks us to consider its new claim on the ground that it presents a significant legal question of broad impact and great public concern. We repeat here what we said in *Finnegan*, in which the taxpayers similarly raised a new issue on appeal: that, although "the legal question is significant," "these interests fall well

short of outweighing the interests that counsel against considering the issue." 926 F.3d at 1273. Specifically, we hold that the significance of the legal question presented by Glade's appeal is outweighed by the prejudice that the IRS would suffer if we allowed Glade to present its new claim. We therefore decline to exercise our discretion to consider Glade's claim on this ground.

In sum, we hold that Glade has forfeited its challenges to the statutory framework, and we decline to consider them.

**B**

Next up, Glade's claim that the Tax Court clearly erred when it categorized the Easement Property as an inventory item in the hands of Hawks Bluff.

We are unpersuaded by each of the arguments that Glade presents to support this claim.[1] Glade first contends that the Tax Court misapplied the seven-factor test established in *United States v. Winthrop*, 417 F.2d 905, 909–10 (5th Cir. 1969), for determining whether a taxpayer's property is a capital asset or an investment item. In particular, Glade faults the Tax Court for both failing to consider several *Winthrop* factors and weighing facts not contemplated by the *Winthrop* factors.

---

[1] "[I]t is a question of fact whether the taxpayer intended to hold the property primarily for sale in the ordinary course of business or for investment purposes." *Boree v. Comm'r of Internal Revenue Serv.*, 837 F.3d 1093, 1100 (11th Cir. 2016). "This Court reviews the Tax Court's . . . factual findings for clear error." *Id.* at 1099–100 (citation modified).

But we've rejected these arguments before, in *Boree v. Commissioner of Internal Revenue Service*, 837 F.3d 1093 (11th Cir. 2016). In that case, the taxpayers argued that the Tax Court erred by failing to consider five of the *Winthrop* factors. *Id.* at 1104–05. We dismissed that argument, quoting *Winthrop* itself: "Despite their frequent use[,] these seven factors in and of themselves have no independent significance, but only form part of a situation which in the individual case must be considered in its entirety. . . ." *Id.* at 1105 (quoting *Winthrop*, 417 F.2d at 910) (citation modified). Furthermore, we expressly held in *Boree* that the Tax Court may consider facts outside the *Winthrop* factors. *See id.* (holding that the Tax Court "appropriately" gave weight to a fact that was "not contemplated in the *Winthrop* factors"). Our holding in *Boree* thus forecloses Glade's arguments that the Tax Court misapplied *Winthrop*.

Next, Glade contends that, even aside from its application of *Winthrop*, the Tax Court made a number of mistakes in its factfinding. Glade takes issue, for example, with the Tax Court's heavy reliance on Hawks Bluff's 2012 tax return, in which Hawks Bluff "reported that it was a real estate dealer and reported the Easement Property as inventory." *Glade*, T.C.M. (RIA) 2023-082, at *7. Glade argues that the Tax Court shouldn't have relied on the tax return because it "does not reflect Glade's intent." Br. of Appellant at 42. But as § 724(b) makes clear, Glade's intent is irrelevant. Rather, the character of the Easement Property depends on the intent of Hawks Bluff, the partner that contributed the property to Glade. *See* § 724(b)(2) (specifying that § 724(b) applies to property that "was an inventory item in the hands of [the contributing] partner").

Similarly unavailing is Glade's argument that the Tax Court improperly considered the purpose of Hawks Bluff's predecessor, ILC, when ILC held the Easement Property. Subsection 724(b) applies to property that was inventory in the hands of the contributing partner "immediately before such contribution." § 724(b)(2). Glade argues that, because ILC didn't hold the Easement Property "immediately before" Hawks Bluff contributed it to Glade, the Tax Court erred in considering ILC's purpose in holding it. Glade's point might stand if Hawks Bluff and ILC were wholly distinct entities without any relationship to each other. But as the Tax Court found, "Hawks Bluff was organized to take over ILC's failing real estate business." *Glade*, T.C.M. (RIA) 2023-082, at *25. Moreover, of Hawks Bluff's three owners, two were the owners of ILC and the third was ILC's real-estate advisor. Accordingly, the Tax Court had reason to view ILC's purpose as probative—if only weakly probative, given the Tax Court's primary reliance on Hawks Bluff's 2012 tax return—of Hawks Bluff's purpose in holding the Easement Property.

Finally, Glade argues that the Tax Court should have imposed an evidentiary burden on the IRS to disprove its entitlement to its claimed deduction. We disagree. The Code provides for a burden-shifting framework. *See* 26 U.S.C. § 7491(a). When a taxpayer introduces "credible evidence" in support of its position, "the Secretary shall have the burden of proof with respect to such issue." *Id.* Here, Glade did not introduce credible evidence to shift the burden. Accordingly, we hold that the Tax Court was not obliged to shift the burden of proof to the IRS.

### III

For the foregoing reasons, we **AFFIRM** the Tax Court's judgment.